
regarding the geographical scope and duration of the closure. The Southeast Fisheries Science Center's assessment will be provided to the RA on or about March 1 of each year. If the RA determines that a closure is necessary, the closure falls within the scope of the potential closures evaluated in the Gulf Shrimp FMP, and good cause exists to waive notice and comment, NMFS will implement the closure by publication of a final rule in the **Federal Register**. If such good cause waiver is not justified, NMFS will implement the closure via appropriate notice and comment rulemaking. NMFS intends that any closure implemented consistent with this paragraph (d)(l) will begin on the same date and time as the Texas closure, as described in paragraph (a) of this section, unless circumstances dictate otherwise.

\*      \*      \*      \*      \*

■ 4. In § 622.60, revised paragraphs (a) and (b) to read as follows:

### § 622.60   Adjustment of management measures.

\*      \*      \*      \*      \*

(a) *Gulf penaeid shrimp.* For a species or species group: Reporting and monitoring requirements, permitting requirements, size limits, vessel trip limits, closed seasons or areas and reopenings, quotas (including a quota of zero), MSY (or proxy), OY, management parameters such as overfished and overfishing definitions, gear restrictions (ranging from regulation to complete prohibition), gear markings and identification, vessel markings and identification, acceptable biological catch (ABC) and ABC control rules, rebuilding plans, restrictions relative to conditions of harvested shrimp (maintaining shrimp in whole condition, use as bait), target effort and fishing mortality reduction levels, bycatch reduction criteria, BRD certification and decertification criteria, BRD testing protocol and certified BRD specifications, and target effort reduction for juvenile red snapper mortality.

(b) *Gulf royal red shrimp.* Reporting and monitoring requirements, permitting requirements, size limits, vessel trip limits, closed seasons or areas and reopenings, annual catch limits (ACLs), annual catch targets (ACTs), quotas (including a quota of zero), accountability measures (AMs), MSY (or proxy), OY, management parameters such as overfished and overfishing definitions, gear restrictions (ranging from regulation to complete prohibition), gear markings and identification, vessel markings and identification, ABC and ABC control rules, rebuilding plans, and restrictions relative to conditions of harvested shrimp (maintaining shrimp in whole condition, use as bait), and target effort reduction for juvenile red snapper mortality.

[FR Doc. 2020–01533 Filed 2–5–20; 8:45 am]

**BILLING CODE 3510–22–P**

---

## DEPARTMENT OF COMMERCE

### National Oceanic and Atmospheric Administration

### 50 CFR Part 622

[Docket No. 200124–0029]

RIN 0648–BI84

### Fisheries of the Caribbean, Gulf of Mexico, and South Atlantic; Reef Fish Fishery of the Gulf of Mexico; Amendments 50A–F

**AGENCY:** National Marine Fisheries Service (NMFS), National Oceanic and Atmospheric Administration (NOAA), Commerce.

**ACTION:** Final rule.

**SUMMARY:** NMFS issues regulations to implement management measures described in Amendments 50A, 50B, 50C, 50D, 50E, and 50F to the Fishery Management Plan for Reef Fish Resources in the Gulf of Mexico (FMP), as prepared by the Gulf of Mexico Fishery Management Council (Council) (Amendments 50A–F). This final rule delegates authority to Louisiana, Mississippi, Alabama, Florida, and Texas (Gulf states), to establish specific management measures for the harvest of red snapper in Federal waters in the Gulf of Mexico (Gulf) by the private angling component of the recreational sector. The purposes of this final rule and Amendments 50A–F are to increase fishing opportunities and economic benefits by allowing each Gulf state to establish specific management measures for the recreational harvest of red snapper in Federal waters by private anglers landing in that state.

**DATES:** This final rule is effective February 6, 2020.

**ADDRESSES:** Electronic copies of Amendments 50A–F may be obtained from the website: *https://www.fisheries.noaa.gov/action/amendment-50a-f-state-management-program-recreational-red-snapper*. Amendments 50A–F include an environmental impact statement, environmental assessments, a fishery impact statement, a regulatory impact review, and a Regulatory Flexibility Act (RFA) analysis.

**FOR FURTHER INFORMATION CONTACT:** Lauren Waters, NMFS Southeast Regional Office, telephone: 727–824–5305; email: *lauren.waters@noaa.gov*.

**SUPPLEMENTARY INFORMATION:** NMFS and the Council manage the Gulf reef fish fishery, which includes red snapper, under the FMP. The Council prepared the FMP and NMFS implements the FMP through regulations at 50 CFR part 622 under the authority of the Magnuson-Stevens Fishery Conservation and Management Act (Magnuson-Stevens Act).

On August 6, 2019, NMFS published a notice of availability for Amendments 50A–F and requested public comment (84 FR 38198). On October 2, 2019, NMFS published a proposed rule for Amendments 50A–F and requested public comment (84 FR 52438). NMFS approved Amendments 50A–F on November 6, 2019. The proposed rule and Amendments 50A–F outline the rationale for the actions contained in this final rule. A summary of the management measures described in Amendments 50A–F and implemented by this final rule is described below.

All weights described in this final rule are in round weight.

### Background

The red snapper stock annual catch limit (ACL) is divided into commercial (51 percent) and recreational (49 percent) sector allocations. In 2015, through Amendment 40 to the FMP, the recreational sector was separated into a private angling component and a Federal charter vessel and headboat (for-hire) component until 2022 (80 FR 22422, April 22, 2015). Within the recreational sector, the recreational ACL is allocated 57.7 percent to the private angling component and 42.3 percent to the for-hire component. Recreational harvest of red snapper in Gulf Federal waters is managed through a two-fish bag limit, a 16-inch (40.6 cm), total length (TL), minimum size limit, and fishing seasons for each component that begin on June 1 and close when the annual catch target (ACT) of the respective recreational component is projected to be reached. However, for the 2018 and 2019 fishing years, NMFS issued exempted fishing permits (EFP) to each of the five Gulf states to allow each state to set the fishing season for private anglers landing in that state. The fishing season for the for-hire component continues to be set by NMFS. The Gulf red snapper stock is not undergoing overfishing, and is not overfished but continues to be managed under a rebuilding plan that ends in 2032.

Exhibit 4

From 1996 through 2014, the recreational fishing season for red snapper in Gulf Federal waters became progressively shorter, and increased catch rates and inconsistent (longer) Gulf state water recreational fishing seasons contributed to recreational harvest overages. Recreational fishermen throughout the Gulf have requested more flexibility from the Council and NMFS in recreational red snapper management to provide greater socio-economic benefits to their local areas.

In 2017, the Council began developing Amendments 50A–F to establish state management programs for the harvest of red snapper in the Gulf by the recreational sector. State management refers to allowing a state to set some regulations applicable to anglers landing red snapper in that state (*e.g.,* recreational bag limits and season length), or in some circumstances applicable to anglers fishing for red snapper in Federal waters off that state (*e.g.,* closed areas). Amendment 50A includes actions affecting all Gulf states and the overall Federal management of recreational red snapper, regardless of whether all Gulf states participate in a state management program. Amendments 50B–F are individual amendments for each Gulf state (Louisiana, Mississippi, Alabama, Florida, and Texas, respectively) and contain the Council's selection of preferred alternatives for each individual state management plan.

Management measures under a state's management program must achieve the same conservation goals as the current Federal management measures (*e.g.,* constrain harvest to the state's allocated portion of the recreational ACL). Although under state management for measures controlling certain harvest activities, red snapper would remain a federally managed species. The Council's Scientific and Statistical Committee would continue to recommend the acceptable biological catch for red snapper, while the Council would determine the total recreational sector, component, and state ACLs.

**Management Measures Contained in This Final Rule**

This final rule delegates authority to each of the Gulf states to establish specific management measures applicable to private anglers in Gulf Federal waters who are landing red snapper in that state. This rule also allows Texas, Alabama, and Florida to request that NMFS close areas of Federal waters to the harvest and possession of red snapper by private anglers, consistent with the analysis provided in Amendment 50A.

*Recreational Components Included in State Management Programs*

Currently, the Council and NMFS specify all management measures for both the Federal private angling and for-hire components in Gulf Federal waters. This final rule delegates to each state the authority to establish specific management measures applicable to the private angling component only. The Council and NMFS will continue to specify all management measures applicable to the Federal for-hire component. The provision ending sector separation after the 2022 fishing year is removed, and separate ACLs will continue to be set for each recreational component indefinitely.

NMFS notes that while Amendments 50A–F and this final rule apply to the recreational red snapper private angling component, a vessel with only state-issued for-hire permits, that fishes under a state's private angling component ACL, may not fish in Federal waters.

*Delegation*

Each state will be required to establish the private angling season structure for harvest of its assigned portion of the ACL, monitor landings, and prohibit further landings of red snapper when the state-specific component ACL is reached or projected to be reached. Each state will also be required to specify a bag limit and a minimum size limit within the range of 14 to 18 inches (35.6 cm to 45.7 cm), TL. In combination, these measures must be expected to maintain harvest levels within the state's ACL. A state could also establish a maximum size limit.

Unless an area of Federal waters is closed to the harvest and possession of red snapper, NMFS expects that enforcement will primarily be conducted in state waters and dockside. However, under the delegation, private anglers will be required to comply with the fishing license or permit requirements of the state in which they intend to land the fish and may possess red snapper in Federal waters only if in compliance with that state's season, bag limit, minimum size limit, and, if applicable, maximum size limit.

If NMFS determines that a state's red snapper private angling-component regulations are inconsistent with the FMP and the state fails to correct the inconsistency after notice and an opportunity to do so, or a state does not specify the required management measures, then NMFS would suspend that state's delegation and publish a notice in the **Federal Register** stating that the default management measures for the red snapper private angling component apply in Federal waters off that state. The default management measures are the current season (June 1 until the projected closure date), bag limit (2 fish per person per day), and minimum size limit (16 inches (40.6 cm), TL). The areas of Federal waters off Florida and off Texas are currently defined in 50 CFR 622.2. This final rule adds definitions of "off Alabama," "off Mississippi," and "off Louisiana," so that each Gulf state will have a defined Federal water boundary off that state.

*Allocation*

Currently, the red snapper private angling component ACL is managed as a single unit for all of the Gulf states. This final rule apportions the private angling component ACL to each state. The allocation is based on the allocations requested by each state in its EFP application, which totaled 96.22 percent of the overall component ACL. The remaining 3.78 percent is apportioned between Florida and Alabama, proportionally, based on their EFP allocation request. Therefore, this final rule establishes the apportionment of the private angling ACL to each Gulf state as follows: Alabama 26.298 percent (1,122,662 lb (509,231 kg)), Florida 44.822 percent (1,913,451 lb (867,927 kg)), Louisiana 19.120 percent (816,233 lb (370,237 kg)), Mississippi 3.550 percent (151,550 lb (68,742 kg)), and Texas 6.210 percent (265,105 lb (120,250 kg)).

If NMFS suspends one or more state's delegation, NMFS would project the private angling season in Federal waters off the applicable states based on the remaining aggregate portion of the ACL reduced by the established 20 percent buffer that is used to determine the Federal annual catch target. Anglers who fish in Federal waters off a state without an active delegation of authority would fish under the default Federal regulations (season, size limit, and bag limit) as described previously.

*Post-Season ACL Adjustments*

The final rule establishes post-season accountability measures (AM). An overage adjustment, or payback provision, is an AM that reduces the following year's ACL by a specified amount. The current recreational red snapper post-season AM applies when the stock is classified as overfished and an overage of the total recreational sector's ACL occurs. If red snapper is overfished, the current AM requires NMFS to reduce the recreational sector ACL and ACT, and applicable

Exhibit 4

component ACL and ACT, in the year following an overage of the total recreational ACL by the full amount of the overage, unless the best scientific information available determines that a greater, lesser, or no overage adjustment is necessary. This final rule establishes additional post-season ACL overage adjustments for states with an active delegation, regardless of stock status. If the landings of a state exceed that state's ACL, then in the following fishing year that state's ACL would be reduced by the amount of the ACL overage in the prior fishing year, unless the best scientific information available determines that a greater, lesser, or no overage adjustment is necessary. The total recreational ACL and the total private angling component ACL would also be reduced.

*Area Closures*

This final rule will allow a Gulf state, consistent with the terms of an active delegation, to request that NMFS close all, or an area of, Federal waters to the harvest and possession of red snapper by private anglers. The state would request the closure by letter to NMFS, providing dates and geographic coordinates for the closure. If the request is within the scope of the analysis in Amendment 50A, NMFS would publish a notice in the **Federal Register** implementing the closure in Federal waters off that state for the fishing year.

Based on the analysis in Amendment 50A, Texas would be able to request a closure of all Federal waters off the state to allow a year-round fishing season in state waters and a limited season in Federal waters by decreasing the catch rate. Florida would be able to request a closure of Federal waters off the west coast of the state, seaward of coordinates approximating the 20-fathom (36.6-m) depth contour or the 35-fathom (64.0-m) depth contour, for the duration of Florida's open private angling component season. Alabama would be able to request a closure of Federal waters off the state, seaward of coordinates approximating the 20-fathom (36.6-m) depth contour or the 35-fathom (64.0-m) depth contour, for the duration of Alabama's open private angling component season. Florida and Alabama want the ability to close deeper waters to potentially extend their seasons by reducing the average size of fish landed. The coordinates for any closure off Texas, Florida, or Alabama are provided in Appendix H of Amendment 50A and would be included in the **Federal Register** notice implementing the closure. Neither Louisiana nor Mississippi provided any potential closures to analyze in Amendment 50A and these states would not be able to request Federal waters closures through this process without further action by the Council.

**Comments and Responses**

NMFS received a total of 31 comments on the notice of availability and proposed rule for Amendments 50A–F. Of these, 29 agreed with portions of, or the entirety of, the actions in Amendments 50A–F and the proposed rule and 2 were opposed to Amendments 50A–F. Comments specific to Amendments 50A–F and the proposed rule are grouped as appropriate and summarized below, followed by NMFS' specific response.

*Comment 1:* Private recreational anglers will not be aware of the location of state boundaries that extend into Federal waters and could land fish in a state different than where they were caught. This could lead to overfishing.

*Response:* The areas of Federal waters off Florida and off Texas are currently defined in 50 CFR 622.2, and this final rule adds definitions of "off Alabama," "off Mississippi," and "off Louisiana," so that each Gulf state will have a defined Federal water boundary off that state. Regardless of where a red snapper is caught, it will be counted towards the ACL of the state in which it is landed. Thus, all red snapper caught by the private angling component will be accounted for under the state management programs. The combined ACLs of the Gulf states are equivalent to the current Federal ACL for private angling component. Therefore, NMFS does not expect overfishing to occur as a result of fishermen fishing in waters off a state other than the state in which the fish are landed.

*Comment 2:* The AMs in Amendments 50A–F are inadequate to ensure the states stay within their respective ACLs, which could result in exceeding the recreational sector ACL and negatively affecting for-hire fishermen. If the total ACL is also exceeded this could negatively affect the red snapper commercial sector.

*Response:* NMFS disagrees that the AMs established through Amendments 50A–F are inadequate to ensure that each state's landings are within the state ACL. Amendments 50B–F require each state to monitor landings by the private angling component and to prohibit further landings when the state's ACL is reached or projected to be reached. NMFS expects that each state's ability to constrain landings to its respective ACL will improve with experience, which will make this in-season AM more effective over time. Further, each state has an additional incentive to constrain landings to it's ACL because Amendments 50B–F establish state-specific post-season AMs. Regardless of stock status, if a state's private angling component landings exceeds its allocated ACL, then in the following year that state's private angling component ACL would be reduced by the amount of the ACL overage in the prior fishing year, unless the best scientific information available determines that a greater, lesser, or no overage adjustment is necessary.

*Comment 3:* Amendments 50A–F and the proposed rule could lead to competition between states to allow private anglers to harvest more fish than neighboring states. This competition could result in overfishing of red snapper.

*Response:* NMFS disagrees that giving each state the ability to establish specific management measures applicable to red snapper landed in that state will lead to overfishing. Each state must have a recreational bag limit and a minimum size limit between 14 to 18 inches (35.6 cm to 45.7 cm), TL, and may establish a maximum size limit. While this allows each state some management flexibility, that flexibility is limited in scope because each state is also allocated a portion of the total private recreational ACL and is required to monitor landings and prohibit harvest when its respective ACL has been met. If NMFS determines that a state's red snapper private angling-component regulations are inconsistent with the FMP and the state fails to correct the inconsistency after NMFS provides notice and an opportunity to do so, or a state does not specify the required management measures described in this final rule, then NMFS would suspend that state's delegation and the default management measures for the red snapper private angling component would then apply in the Federal waters off that state.

*Comment 4:* States should improve the accuracy and completeness of private angling component landings data by adopting requirements similar to those used in the commercial sector, such as electronic reporting prior to landing and penalties for inaccurate reporting.

*Response:* The Council did not consider requiring more stringent reporting requirements for the private angling component in Amendments 50A–F. Each state is required to establish the private angling season structure for harvest of its assigned portion of the ACL, monitor landings, and prohibit further landings of red snapper when the state-specific

Exhibit 4

component ACL is reached or projected to be reached. Each state has a program to monitor recreational red snapper landings and has the ability to enforce its reporting requirements.

*Comment 5:* It is unclear how NMFS will assess whether the state ACLs and the overfishing limit have been exceeded because each state's ACL was calculated using MRIP-based landings, but each state is monitoring its landings using its own reporting system, and none of the state reporting systems are directly comparable to the ACL. Therefore, NMFS should implement state ACLs that are calibrated to each state's data collection program or reduce the states' ACLs by a buffer that accounts for uncertainty in the different programs. If NMFS fails to address this common currency issue before implementation of this final rule, then Amendments 50A–F and the final rule would be inconsistent with National Standard 1 regarding preventing overfishing while achieving optimum yield, and National Standard 2 regarding management measures being based upon the best scientific information available. Amendments 50A–F and final rule would also be inconsistent with several other provisions of the Magnuson-Stevens Act, such as the requirements to establish ACLs and AMs, have separate quotas for the commercial and recreational sectors, rebuild overfished stocks, and fairly and equitably allocate recovery benefits.

*Response:* NMFS agrees that the state ACLs should be calibrated to each state's reporting system. The NMFS Office of Science & Technology is working with the Gulf states to develop a peer-reviewed calibration that is expected to be available in the spring of 2020. When the calibration is available, NMFS intends to apply it to the established state ACLs and implement catch levels in the appropriate state currencies through appropriate rulemaking. When implemented, each state's landings will be compared to its revised ACL to determine if there was an overage. As noted previously, this rule requires that each state payback any overage in a fishing year during the following fishing year. Because the rule adjusting the state ACLs may not be complete until late 2020, NMFS intends to inform each state of any anticipated change in its ACL as soon as possible to allow the states to set or modify their management measures, as appropriate. This will help ensure that the private angling ACL is not exceeded and overfishing of the red snapper stock does not occur in 2020. Implementing the calibrated ACLs in 2020 will also help ensure that this final rule is consistent the Magnuson-Stevens Act.

*Comment 6:* The state ACL allocations should be based on biological factors such as habitat area and the number of fish in that area, not on the number of permit holders or the amount of fish caught in that state. Additionally, the allocation of the ACL among the states is not fair and equitable.

*Response:* The Council considered several alternatives to allocate the private recreational ACL among the states. Some allocation alternatives were based on historical landings but others were based on spatial abundance of red snapper biomass in combination with a proportion of recreational trips. However, the Council selected the state ACL allocations based on the amounts requested by each state in its EFP application that were submitted for the 2018–2019 fishing seasons, which totaled 96.22 percent of the private-angling component ACL. The remaining 3.78 percent of the component ACL was allocated between Florida and Alabama proportionally based on their EFP requests because these two states had the shortest private angling fishing seasons under the EFPs. The Council determined, and NMFS agrees, that the allocation in the final rule is fair and equitable because Texas, Louisiana, and Mississippi were allocated enough to maintain their private angling fishing seasons under the EFPs, and Florida and Alabama are allocated slightly more than requested under the EFPs to provide the opportunity for those states to increase their private angling fishing season length.

*Comment 8:* The impact of bycatch, including bycatch of juvenile red snapper by the Gulf shrimp fishery, should be considered in setting red snapper catch levels and state ACL allocations.

*Response:* The Council did not consider adjusting the red snapper component or sector catch levels in Amendments 50A–F or adjusting the state ACL allocations based on the impacts of red snapper bycatch in another fishery. Bycatch of red snapper, including bycatch attributed to the Gulf shrimp fishery, is addressed in the red snapper stock assessment, which is used to set red snapper catch levels. The most recent stock assessment for red snapper that occurred in 2018 was used to set the current catch levels and was referenced in developing Amendments 50A–F. Future stock assessments will continue to incorporate information on red snapper bycatch and will be used to revise catch levels as appropriate.

**Classification**

The Regional Administrator, Southeast Regional Office, NMFS has determined that this final rule is consistent with the applicable FMP, the Magnuson-Stevens Act, and other applicable law.

This final rule has been determined to be not significant for purposes of Executive Order 12866. This rule is not an E.O. 13771 regulatory action because this rule is not significant under E.O. 12866.

The Magnuson-Stevens Act provides the statutory basis for this rule. No duplicative, overlapping, or conflicting Federal rules have been identified.

The Chief Counsel for Regulation of the Department of Commerce certified to the Chief Counsel for Advocacy of the Small Business Administration during the proposed rule stage that this rule would not have a significant economic impact on a substantial number of small entities. The factual basis is not repeated here. No public comments were made related to the economic implications and potential impacts on small entities, and no changes to this final rule were made in response to public comments. As a result, a final regulatory flexibility analysis was not required and none was prepared.

The Assistant Administrator for NMFS finds that there is good cause to waive the 30-day delay of this final rule's effectiveness, pursuant to the authority set forth in 5 U.S.C. 553(d)(3), as such procedure for this final rule would be contrary to the public interest.

Delaying the effectiveness of this final rule would be contrary to the public interest because of the need to implement this action as soon as possible in 2020. The fishing year for Gulf red snapper began on January 1, 2020, and the Gulf states need to specify their private angling management measures, including the fishing season, for this fishing year. Some of the states may want to allow the private angling component to fish for red snapper before June 1, the date the Federal season would open in the absence of this rule. Delaying the implementation of this final rule will decrease the flexibility each Gulf state has to set its season, and the time each Gulf state has to implement its state-specific management measures. Allowing the maximum available time for the state seasons and for the state process to take place is in the public interest because it increases the expected benefits of this final rule with respect to recreational fishing opportunities.

Exhibit 4

**List of Subjects in 50 CFR Part 622**

Fisheries, Fishing, Gulf, Recreational, Red snapper.

Dated: January 24, 2020.

**Samuel D. Rauch III,**

*Deputy Assistant Administrator for Regulatory Programs, National Marine Fisheries Service.*

For the reasons set out in the preamble, 50 CFR part 622 is amended as follows:

**PART 622—FISHERIES OF THE CARIBBEAN, GULF OF MEXICO, AND SOUTH ATLANTIC**

■ 1. The authority citation for part 622 continues to read as follows:

**Authority:** 16 U.S.C. 1801 *et seq.*

■ 2. In § 622.1, paragraph (d), Table 1, add footnote 10 to the entry for "FMP for the Reef Fish Resources of the Gulf of Mexico" to read as follows:

**§ 622.1   Purpose and scope.**

\* \* \* \* \*

(d) \* \* \*

TABLE 1 TO § 622.1—FMPs IMPLEMENTED UNDER PART 622

| FMP title | Responsible fishery management council(s) | Geographical area |
|---|---|---|
| \* \* | \* \* \* | \* \* |
| FMP for the Reef Fish Resources of the Gulf of Mexico. | GMFMC | Gulf.[1 3 4 7 10] |
| \* \* | \* \* \* | \* \* |

[1] Regulated area includes adjoining state waters for purposes of data collection and quota monitoring.

\* \* \* \* \* \* \*

[3] Regulated area includes adjoining state waters for Gulf red snapper harvested or possessed by a person aboard a vessel for which a Gulf red snapper IFQ vessel account has been established or possessed by a dealer with a Gulf IFQ dealer endorsement.

[4] Regulated area includes adjoining state waters for Gulf groupers and tilefishes harvested or possessed by a person aboard a vessel for which an IFQ vessel account for Gulf groupers and tilefishes has been established or possessed by a dealer with a Gulf IFQ dealer endorsement.

\* \* \* \* \* \* \*

[7] Hogfish are managed by the FMP in the Gulf EEZ except south of 25°09′ N lat. off the west coast of Florida. Hogfish in the remainder of the Gulf EEZ south of 25°09′ N lat. off the west coast of Florida are managed under the FMP for the Snapper-Grouper Fishery of the South Atlantic Region.

\* \* \* \* \* \* \*

[10] Certain provisions for the management of the private angling component of recreational red snapper in the Gulf EEZ have been delegated to the Gulf states, as specified in § 622.23.

■ 3. In § 622.2, remove the definition of "Off Louisiana, Mississippi, and Alabama" and add in alphabetical order definitions for "Off Alabama", "Off Louisiana", and "Off Mississippi" to read as follows:

**§ 622.2   Definitions and acronyms.**

\* \* \* \* \*

*Off Alabama* means the waters in the Gulf west of a rhumb line at 87°31.1′ W long., which is a line directly south from the Alabama/Florida boundary, to a rhumb line at 88°23.1′ W long., which is a line directly south from the Mississippi/Alabama boundary.

\* \* \* \* \*

*Off Louisiana* means the waters in the Gulf west of a rhumb line at 89°10.0′ W long., which is a line extending directly south from South Pass Light, to a rhumb line beginning at 29°32.1′ N lat., 93°47.7′ W long. and extending to 26°11.4′ N lat., 92°53.0′ W long., which line is an extension of the boundary between Louisiana and Texas.

*Off Mississippi* means the waters in the Gulf west of a rhumb line at 88°23.1′ W long., which is a line directly south from the Mississippi/Alabama boundary, to a rhumb line at 89°10.0′ W long., which is a line extending directly south from South Pass Light.

\* \* \* \* \*

■ 4. In § 622.3, add paragraph (f) to read as follows:

**§ 622.3   Relation to other laws and regulations.**

\* \* \* \* \*

(f) Alabama, Florida, Louisiana, Mississippi, and Texas are delegated the authority to specify certain management measures related to the harvest and possession of red snapper by the private angling component in the Gulf EEZ. See § 622.23 for the Gulf recreational red snapper management measures that have been delegated.

■ 5. Section 622.23 is added to read as follows:

**§ 622.23   State management of the red snapper recreational sector private angling component in the Gulf EEZ.**

(a) *Delegation.* Alabama, Florida, Louisiana, Mississippi, and Texas (Gulf states) are delegated the authority to manage certain aspects of recreational red snapper harvest by the private angling component in the Gulf EEZ (*i.e.,* delegation). All other management measures for recreational red snapper in the Gulf EEZ not specified in this section continue to apply during state management.

(1) *Delegation of authority.* As described in the FMP for the Reef Fish Resources of the Gulf of Mexico, each Gulf state must specify the red snapper private angling component fishing season start and end dates to maintain harvest levels within the state's ACL, as stated in paragraph (a)(1)(ii) of this section. Each state must also specify a recreational bag limit and a minimum size limit within the range of 14 to 18 inches (35.6 cm to 45.7 cm), total length. Each state may specify a maximum size limit. If NMFS determines that a state's red snapper private angling component regulations are inconsistent with the FMP and the state fails to correct the inconsistency after notice and an opportunity to do so, or a state does not specify the required management measures set forth above, *i.e.,* fishing season start and end dates, a recreational bag limit, and a minimum size limit, then NMFS will publish a notice in the **Federal Register** stating that the default management measures for the red snapper private angling component, as described in paragraph (a)(2) of this section, apply in the EEZ off that state.

Exhibit 4

(i) *State management areas.* For purposes of the delegation of the authority to establish certain management measures for the red snapper private angling component, five areas in the Gulf EEZ have been established; one off each of the five Gulf states: Alabama, Florida, Louisiana, Mississippi, and Texas. The boundaries off each state are described in § 622.2.

(ii) *State private angling component ACLs.* All ACLs specified below are in round weight.

(A) *Alabama regional management area*—1,122,662 lb (509,231 kg).

(B) *Florida regional management area*—1,913,451 lb (867,927 kg).

(C) *Louisiana regional management area*—816,233 lb (370,237 kg).

(D) *Mississippi regional management area*—151,550 lb (68,742 kg).

(E) *Texas regional management area*—265,105 lb (120,250 kg).

(2) *Default management measures.* If a state's delegation is suspended, the Federal management measures for the private angling season, recreational bag limit, and minimum size limit as described in §§ 622.34(b) (seasonal closure), 622.37(a)(1) (size limit), 622.38(b)(3) (bag limit), and 622.41(q)(2)(i) (season length) apply in the EEZ off that state. All other management measures not specified in this section remain in effect.

(b) *Post-season ACL adjustments for states with an active delegation.* If a state's red snapper private angling component landings exceed the applicable state's component ACL specified in paragraph (a)(1)(ii) of this section, the AA will file a notification with the Office of the Federal Register, at or near the beginning of the following fishing year, reducing that state's private angling ACL by the amount of the ACL overage in the prior fishing year, unless the best scientific information available determines that a greater, lesser, or no overage adjustment is necessary.

(c) *Area closures.* As described in the FMP, for the red snapper private angling component, a state with an active delegation may request that NMFS establish an area closure in the EEZ off that state that prohibits the private angling component from harvesting or possessing red snapper. If NMFS determines that the request is within the scope of the analysis in the FMP, NMFS will publish a notice in the **Federal Register** to implement the requested closure for the fishing year.

■ 6. In § 622.34, revise paragraph (b) to read as follows:

### § 622.34 Seasonal and area closures designed to protect Gulf reef fish.

* * * * *

(b) *Seasonal closure of the recreational sector for red snapper.* The recreational sector for red snapper in or from the Gulf EEZ is closed from January 1 through May 31, each year. During the closure, the bag and possession limit for red snapper in or from the Gulf EEZ is zero. See § 622.23(a)(1) regarding the fishing season for states with an active delegation of state management of the red snapper private angling component. A person subject to the private angling component bag limit under an active delegation of state management must be in compliance with the fishing license (permit) requirements of the state in which they intend to land the fish and may not possess red snapper in the Gulf EEZ when that state season is closed.

* * * * *

■ 7. In § 622.37, revise paragraph (a)(1) to read as follows:

### § 622.37 Size limits.

* * * * *

(a) * * *

(1) *Red snapper*—16 inches (40.6 cm), TL, for a fish taken by a person subject to the bag limit specified in § 622.38(b)(3) and 13 inches (33.0 cm), TL, for a fish taken by a person not subject to the bag limit. See § 622.23(a)(1) regarding the minimum size limit for states with an active delegation of state management of the red snapper private angling component. A person subject to the private angling component bag limit under an active delegation of state management must be in compliance with the fishing license (permit) requirements of the state in which they intend to land the fish and may not possess red snapper in the Gulf EEZ that are smaller than may be possessed in that state. Additionally, fish taken by persons subject to the private angling component bag limit under state management may not be less than 14 inches (35.6 cm), TL, in the Gulf EEZ.

* * * * *

■ 8. In § 622.38, revise paragraph (b)(3) to read as follows:

### § 622.38 Bag and possession limits.

* * * * *

(b) * * *

(3) *Red snapper*—2. However, no red snapper may be retained by the captain or crew of a vessel operating as a charter vessel or headboat. The bag limit for such captain and crew is zero. See § 622.23(a)(1) regarding the bag limit applicability for states with an active delegation of state management of the red snapper private angling component. A person subject to the private angling component bag limit under an active delegation of state management must be in compliance with the fishing license (permit) requirements of the state in which they intend to land the fish and may not possess more red snapper in the Gulf EEZ than may be possessed in that state.

* * * * *

■ 9. In § 622.39, revise paragraphs (a)(2)(i)(B) and (C) to read as follows:

### § 622.39 Quotas.

* * * * *

(a) * * *
(2) * * *
(i) * * *

(B) *Federal charter vessel/headboat component quota.* The Federal charter vessel/headboat component quota applies to vessels that have been issued a valid Federal charter vessel/headboat permit for Gulf reef fish any time during the fishing year. A person aboard a vessel that has been issued a charter vessel/headboat permit for Gulf reef fish any time during the fishing year may not harvest or possess red snapper in or from the Gulf EEZ when the Federal charter vessel/headboat component is closed. The Federal charter vessel/headboat component quota is 3.130 million lb (1.420 million kg), round weight.

(C) *Private angling component quota.* The private angling component quota applies to vessels that fish under the bag limit and have not been issued a Federal charter vessel/headboat permit for Gulf reef fish any time during the fishing year. The private angling component quota is 4.269 million lb (1.936 million kg), round weight.

* * * * *

■ 10. In § 622.41, add a sentence to the end of paragraph (q)(2)(i) and revise paragraph (q)(2)(iii) to read as follows:

### § 622.41 Annual catch limits (ACLs), annual catch targets (ACTs), and accountability measures (AMs).

* * * * *

(q) * * *
(2) * * *
(i) * * * See § 622.23 (a)(1) regarding the fishing season for the private angling component for states with an active delegation.

* * * * *

(iii) *Recreational ACTs.*
(A) [Reserved]
(B) *Federal charter vessel/headboat component ACT.* The Federal charter vessel/headboat component ACT applies to vessels that have been issued a valid Federal charter vessel/headboat permit for Gulf reef fish any time during the fishing year. A person aboard a

Exhibit 4

vessel that has been issued a charter vessel/headboat permit for Gulf reef fish any time during the fishing year may not harvest or possess red snapper in or from the Gulf EEZ when the Federal charter vessel/headboat component is closed. For the 2019 fishing year, the component ACT is 2.848 million lb (1.292 million kg), round weight. For the 2020 and subsequent fishing years, the component ACT is 2.504 million lb (1.136 million lb), round weight.

(C) *Private angling component ACT.* The private angling component ACT applies to vessels that fish under the bag limit and have not been issued a Federal charter vessel/headboat permit for Gulf reef fish any time during the fishing year. The component ACT is 3.415 million lb (1.549 million kg), round weight.

[FR Doc. 2020–01653 Filed 2–5–20; 8:45 am]

**BILLING CODE 3510–22–P**

---

**DEPARTMENT OF COMMERCE**

**National Oceanic and Atmospheric Administration**

**50 CFR Part 622**

[Docket No. 200128–0033]

RIN 0648–BJ31

**Fisheries of the Caribbean, Gulf of Mexico, and South Atlantic; Snapper-Grouper Fishery Off the Southern Atlantic Region; Regulatory Amendment 30**

**AGENCY:** National Marine Fisheries Service (NMFS), National Oceanic and Atmospheric Administration (NOAA), Commerce.

**ACTION:** Final rule.

**SUMMARY:** NMFS issues regulations to implement Regulatory Amendment 30 to the Fishery Management Plan for the Snapper-Grouper Fishery of the South Atlantic Region (FMP) (Regulatory Amendment 30), as prepared and submitted by the South Atlantic Fishery Management Council (Council). This final rule modifies the spawning season closures for the commercial and recreational sectors in the exclusive economic zone (EEZ) off North Carolina and South Carolina and establishes a commercial trip limit. Additionally, Regulatory Amendment 30 revises the rebuilding schedule for red grouper. The purpose of this final rule and Regulatory Amendment 30 is to modify the rebuilding schedule and extend protections for red grouper during the spawning season.

**DATES:** This final rule is effective on March 9, 2020.

**ADDRESSES:** Electronic copies of Regulatory Amendment 30 may be obtained from the Southeast Regional Office website at *https://www.fisheries.noaa.gov/action/regulatory-amendment-30-red-grouper-rebuilding-plan.* Regulatory Amendment 30 includes an environmental assessment (EA), a Regulatory Flexibility Act analysis, and a regulatory impact review.

**FOR FURTHER INFORMATION CONTACT:** Mary Vara, telephone: 727–824–5305; email: *mary.vara@noaa.gov.*

**SUPPLEMENTARY INFORMATION:** The snapper-grouper fishery of the South Atlantic is managed under the FMP, and includes red grouper along with other snapper-grouper species. The FMP was prepared by the Council and is implemented through regulations at 50 CFR part 622 under the authority of the Magnuson-Stevens Fishery Conservation and Management Act (Magnuson-Stevens Act).

On October 29, 2019, NMFS published a proposed rule for Regulatory Amendment 30 and requested public comment (84 FR 57840). The proposed rule and Regulatory Amendment 30 outline the rationale for the actions contained in this final rule. A summary of the management measures described in Regulatory Amendment 30 and implemented by this final rule is described below.

**Background**

Red grouper are harvested by both commercial and recreational fishers throughout the South Atlantic. In 2010, a Southeast Data, Assessment and Review (SEDAR) benchmark assessment (SEDAR 19) was completed for South Atlantic red grouper. Based on the results of SEDAR 19, NMFS determined that red grouper was overfished and undergoing overfishing. Amendment 24 to the FMP established a 10-year rebuilding plan that began in 2011, with an end date of 2020 (77 FR 34254; June 11, 2012).

A stock assessment update (SEDAR 53) for red grouper was completed in February 2017 using data through 2015. SEDAR 53 indicated the stock was still overfished and undergoing overfishing, and that stock rebuilding would not be possible by 2020, which is the terminal year of the current rebuilding plan. Therefore, on September 27, 2017, NMFS sent a letter to the Council stating that the South Atlantic red grouper stock was overfished and undergoing overfishing and not making adequate progress towards rebuilding. The Magnuson-Stevens Act requires the implementation of management measures to end overfishing immediately and revise or implement a rebuilding plan within 2 years of notification by NMFS to the Council of this stock status. Therefore, in Abbreviated Framework Amendment 1 to the FMP, NMFS implemented actions to immediately end overfishing of red grouper by reducing the total, commercial, and recreational annual catch limits (ACLs) based on the acceptable biological catch recommendation from the Council's Scientific and Statistical Committee (83 FR 35435; July 26, 2018).

Continued harvest at the levels specified in Abbreviated Framework Amendment 1 is expected to allow for rebuilding the red grouper stock within 10 years, but because the red grouper stock is not projected to fully rebuild by 2020 (SEDAR 53), the Council must also revise the current rebuilding plan so the stock rebuilds in the timeframe mandated by the Magnuson-Stevens Act. Regulatory Amendment 30 addresses the revision to the rebuilding plan.

**Management Measures Contained in This Final Rule**

For red grouper, this final rule modifies the spawning season closure for the commercial and recreational sectors in the EEZ off North Carolina and South Carolina, and establishes a commercial trip limit.

*Commercial and Recreational Spawning Season Closure*

Currently, the commercial and recreational spawning season closure for shallow-water groupers, which includes red grouper, is January through April each year throughout the South Atlantic EEZ. In the EEZ off North Carolina and South Carolina, red grouper spawning occurs during February through June and peaks in April. To extend protection for red grouper during spawning season, this final rule extends the January through April spawning season closure for red grouper through May in the EEZ off North Carolina and South Carolina for both the commercial and recreational sectors.

This action was developed in response to stakeholder concerns that red grouper are often found in spawning condition past the January through April shallow-water grouper spawning season closure, particularly in May, in the EEZ off North Carolina and South Carolina. This final rule also extends the prohibition on the commercial sale and purchase of red grouper in the EEZ off

Exhibit 4